IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Julia Emilia Martínez-Rivera,

    Debtor-Appellant,

            v.

Scotiabank,

    Creditor-Appellee.

**Civil No. 16-1150 (SEC)**

**OPINION & ORDER**

    Julia Emilia Martínez Rivera (Martínez or Debtor) appeals from the Bankruptcy Court's dismissal of her Chapter 13 petition. After parsing the record, the Court finds no discernible error. The Bankruptcy Court's dismissal order is therefore **affirmed**.

**I.    Background**

    The present appeal has roots in two previous bankruptcy filings filed in August 2014. The first is a corporate Chapter 11 case filed by Martínez, as president of the extinct Centro Radiológico de Morovis (the Corporation).[1] See Bankruptcy Case (Bkr.) # 14-06411. The other was Martínez's Chapter 11 bankruptcy petition, which was assigned a consecutive docket number to the corporate case. See Bkr. # 14-06412. In both proceedings, Martínez and the Corporation were represented by the same attorney.

    Shortly thereafter, Martínez moved the Bankruptcy Court for a substantive consolidation of these cases, "with [Martínez] as the surviving entity." See Bkr. # 14-06411, Docket # 11, ¶ 6. She explained that the Corporation had been incorporated in

---

[1] It is undisputed that, by the time Martínez filed this bankruptcy petition, the Corporation had been administratively cancelled by the Puerto Rico State Department for several months, and so Scotiabank contends that Petitioner should have filed a Chapter 7 liquidation instead.

order to "transfer all of Debtor's operations to said company and cease using the 'dba' Centro Radiológico Morovis." Id., ¶ 2. Nevertheless, the only action taken in that direction was the purchase of a property financed by Scotiabank in Morovis, Puerto Rico. Id. Because Martínez was the Corporation's sole officer, and the Corporation's affairs were entirely "steered by [Martínez]," the Bankruptcy Court consolidated the cases over Scotiabank's objections.[2]

In mid-October 2014, the Bankruptcy Court held a hearing to assess the status of the consolidated cases. In relevant part, the minutes of the conference read, verbatim, as follows:

> The debtor is a doctor (radiologist) and the corporation was created, but did never operate, it's the title holder of one of the real property. The debtor works for the Veteran's Hospital and has a private office and has several real estates. The debtor filed bankruptcy to avoid a foreclosure procedure. The debtor is a small business case and will file a plan within sixty (60) days from today.

See Bkr. # 14-06411, Docket # 50 (emphasis added).[3] At the hearing, Debtor and Scotiabank also informed the Court that they had reached a stipulation, but it was missing Debtor's signature.

Martínez never filed the plan by the required deadline. The Bankruptcy Court issued an order to show cause for Martínez to explain why the plan had not been filed. The order further stated that, should Martínez fail to submit the plan, the Bankruptcy Court could "convert or dismiss this case without further hearing." See Bkr. # 14-

---

[2] "[S]ubstantive consolidation merges the assets and liabilities of the debtor entities into a unitary debtor estate, to which all holders of allowed claims are required to look for distribution." In re Hemingway Transp., Inc., 954 F.2d 1, 11–12 (1st Cir. 1992).

[3] The term "small business case" means a case filed under Chapter 11 in which the debtor is a "small business debtor." 11 U.S.C. § 101(51C). A "small business debtor," in turn, "means a person engaged in commercial or business activities… ." Id. at § 101(51D). Although the Bankruptcy Code's definition of "person" includes both individuals and corporations, id. at § 101(41), it is obvious that the Bankruptcy Court's order was directed at Martínez. Moreover, the Corporation never "operated" and so it could not possibly qualify as a "small business debtor" under the Code.

**Civil No. 15-1168 (SEC)**                                                                                      Page 3

06411, Docket # 66. Martínez sought, and was granted, two additional extensions of time to comply with this order. See Id., Docket ## 69, 70, 74, 76, 77. Despite being allowed over four months to comply, Martínez never filed the plan. The Bankruptcy Court thus dismissed the case on March 9, 2015. Id., Docket # 81.

Just four days later, Scotiabank filed a motion for reconsideration asking the Bankruptcy Court to retain jurisdiction over the contested matter and enforce the terms of the stipulation.[4] In her opposition, Debtor stated as follows:

> After analyzing her options and failing to reach an agreement with her secured creditor Scotiabank of Puerto Rico ("Scotiabank") to save her residence, Debtor decided to abide by the clear language of the order issued by this Court at Docket No. 77. As such, Debtor did not file a disclosure statement by the deadline established by this Court, and as admonished at Docket No. 77, the Court proceeded to dismiss the captioned case through an order dated March 9, 2015.

Docket # 88, ¶ 5 (emphasis added). On March 30, 2015, the Bankruptcy Court denied Scotiabank's motion, finding that Scotiabank could continue its foreclosure efforts in the action pending in state court. See Id., Docket # 89.

Although the road appeared clear for Scotiabank, Martínez sprung yet another trap under the guise of a motion for reconsideration. See Id., Docket # 91. There, she asked the Bankruptcy Court to undo the substantive consolidation of the personal and corporate bankruptcy filings. Martínez brazenly argued that the consolidation she requested should never have been granted because, four months prior to filing the Corporation's Chapter 11 case, the Corporation had been administratively dissolved by the Puerto Rico Department of State. Id. Casting the blame for this *faux pas* on her ex-attorney, Debtor explained that what she really wanted was to reorganize her affairs

---

[4] It is not clear whether Debtor ever signed the written agreement. The parties later litigated this issue in state court.

under Chapter 13.[5] Unsurprisingly, the Bankruptcy Court denied her request, and Martínez never appealed.

True to her word, Martínez filed for bankruptcy relief under Chapter 13 four months after the consolidated cases had been dismissed. See Bkr. # 15-05900. Scotiabank quickly moved to dismiss, arguing that the new petition ran afoul of §§ 109(g)(1) and (g)(2) of the Bankruptcy Code. Martínez deployed even more delay tactics, securing two extensions of time (totaling more than 50 days) to respond. See Bkr. # 15-05900, Docket ## 37, 41, 49 & 50. In spite of such a lenient timetable, Martínez filed her response two weeks after the deadline expired. Moreover, Martínez failed to rebut Scotiabank's arguments concerning dismissal under § 109(g). She simply maintained that the Bankruptcy Court's dismissal of the substantively consolidated cases had nothing to do with her present Chapter 13 petition, essentially because the Corporation "was an entity totally separated of Debtor." See Id., Docket # 56, ¶ 2b.

Days later, the Bankruptcy Court entered a short order dismissing the Chapter 13 petition "for the reasons stated in [Scotiabank's] motion to dismiss." Id., Docket # 59. The Bankruptcy Court further barred both Martínez and the Corporation from filing for bankruptcy relief for a two-year period. This appeal followed.

**II.    Analysis**

On appeal, this Court applies the clearly erroneous standard of review to the Bankruptcy Court's findings of fact, and *de novo* review to its conclusions of law. Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

Section 109(g) of the Bankruptcy Code bars a debtor from seeking bankruptcy relief if that person was previously a debtor in another bankruptcy petition within the preceding 180 days, and either: (1) if the previous case "was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the

---

[5] To be sure, this excuse is entirely unavailing. Figueroa Ruiz v. Alegría, 896 F.2d 645, 650 n. 5 (1st Cir. 1990) (in this circuit, parties are generally held accountable for the sins of their attorneys).

court in proper prosecution of the case; or (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362" of the Bankruptcy Code. 11 U.S.C. § 109(g). Congress enacted this provision to curb "abusive repetitive bankruptcy filings by debtors seeking to overcome the grant of relief to a creditor from a stay in a prior case." In re Beal, 347 B.R. 87, 92 (E.D. Wis. 2006).

In the proceedings below, the Bankruptcy Court's dismissal order incorporated by reference Scotiabank's motion to dismiss under § 109(g) (which included arguments under both §§ 109(g)(1) and (g)(2)). Martínez now contends that the dismissal must be vacated because the Bankruptcy Court violated her due process rights in dismissing the petition without notice and a hearing. She also argues that the Bankruptcy Court erred in granting a dismissal under § 109(g)(1) without a finding of willfulness.

Generally, bankruptcy courts are loath to dismiss cases under § 109(g) without a hearing. But where a debtor fails to oppose a motion to dismiss, the bankruptcy court may proceed without a hearing so long as the motion establishes a prima facie case for dismissal under this provision. See In re Allen, No. BAP MB 00-115, 2001 WL 36381911, at *2 (B.A.P. 1st Cir. June 15, 2001); see also In re Rivera Vazquez, No. 13-04935 BKT, 2014 WL 3616232, at *4 (Bankr. D.P.R. July 21, 2014) ("Because Debtors failed to respond to the Motion to Dismiss, the court had no need to hold a hearing on the matter.").[6] That is precisely what happened here.

As the record shows, Martínez did not file her response by the twice-extended deadline. If that were not enough, her belated motion completely failed to rebut Scotiabank's arguments. Moreover, in plain violation of the Local Rules, Martínez's opposition contains not a single citation to any supporting authority. See Local Rule

---

[6] In this District, a Bankruptcy Court may summarily grant an unopposed motion unless one of the following exceptions applies: "(i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise." See Rule 9013-1(c) of the Local Rules for the Bankruptcy Court. But since Petitioner failed to mention this provision, any argument based on these exceptions is waived.

9013-2(a) of the Local Rules for the Bankruptcy Court.[7] Martínez, in short, waived any opposition to Scotiabank's motion.[8] To say more on this point would be to perfume a rose.

Given this waiver, the Court must assess whether Scotiabank's motion put forth a prima facie case for dismissal under § 109(g). See In re Allen, No. BAP MB 00-115, 2001 WL 36381911, at *2 (B.A.P. 1st Cir. June 15, 2001). It clearly does. To recap, dismissal under this section is proper if the debtor was previously a debtor in a case pending in the preceding 180 days, and either (1) the previous case was dismissed for willful failure to abide by a court order, or (2) the debtor voluntarily dismissed the case "following the filing of a request for relief from the automatic stay." 11 U.S.C. § 109(g)(1) & (g)(2).

First, Martínez does not contest that she was previously a debtor within the statutory window. And it would be hard to do so, as the record shows Martínez's filed this action (Bkr. # 15-05900) within 180 days after her previous one (Bkr. # 14-06412) was dismissed. Scotiabank's motion to dismiss also established that the previous case had been dismissed due to Martínez's willful failure to abide by a court order. Recall that, after the substantive consolidation "with Debtor as the surviving entity," see Bkr. # 14-06411, Docket # 11, ¶ 6, the Bankruptcy Court ordered Martínez to file her disclosure statement. But she failed to do so. The Bankruptcy Court allowed her one last opportunity to file the plan, apprising her that the case would otherwise be dismissed. "After analyzing her options … [Martínez] decided to abide by the clear language of the order issued by [the Bankruptcy Court]." Docket # 88, ¶ 5. And so, the

---

[7] This rule provides that "any motion or response thereto must be accompanied by a supporting memorandum that contains the points and authorities in support of the party's position, together with any affidavits or documents in support thereof. The memorandum must also include specific reference to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, these LBRs, and/or other controlling authorities."

[8] Martínez also complains that the Bankruptcy Court "deprived her of a hearing" through which she could have presented evidence showing that she was deserving of relief under Chapter 13. But that would be putting the cart before the horse, as she would only be entitled to a hearing if she had filed a timely response. Scotiabank, in turn, argues that even if Petitioner had timely filed an opposition, a hearing is not mandatory if the record contains uncontroverted evidence supporting dismissal. There is no need to reach this argument since waiver is plain.

**Civil No. 15-1168 (SEC)**                                                                    **Page 7**

case was dismissed. It would be difficult to find a clearer example of knowing and willful failure to abide by a court order.[9]

On appeal, Martínez presents a slew of arguments against the Bankruptcy Court's dismissal order, none of which are particularly coherent. But given her failure to preserve those arguments below, the Court must decline the invitation to review the merits of the order. To do otherwise would be to allow Martínez a second bite at the apple. At this stage, the question is whether she can show that Scotiabank's motion to dismiss did not present a prima facie case under § 109(g).

Framed this way, most of Debtor's arguments fail right out of the gate. For instance, she argues that the Bankruptcy Court erred in dismissing the case without mentioning her belated opposition brief in the order. See Docket # 11, ¶ 4. She also disputes whether dismissal under § 109(g) is mandatory (as Scotiabank argues), or whether the Bankruptcy Court has discretion to retain a case that could be dismissed under that section. But none of these arguments have any bearing on whether Scotiabank presented a prima facie case for dismissal under § 109(g). The only argument that comes close is built upon her contention that the Corporation is a "separate and distinct entity" from herself. As far as the Court can discern, the argument is that she never willfully disregarded the Bankruptcy Court's order to file the plan in the consolidated cases – in violation of § 109(g)(1) – because that order was directed at the Corporation and not at her. Martínez is judicially estopped from raising this argument here.

The doctrine of judicial estoppel is equitable in nature, and "operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding." Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010) (citing InterGen N.V. v.

---

[9] The Bankruptcy Court adopted Scotiabank's argument for dismissal under § 109(g)(2). And, upon review, the Court finds that Scotiabank's motion established a prima facie case for dismissal on this ground. Interestingly, Petitioner fails to mention § 109(g)(2) at all in her briefs, and so any argument on this point is waived. Ortega Cabrera v. Municipality of Bayamon, 562 F.2d 91, 102 n. 10 (1st Cir. 1977) (issue not argued on appeal is treated as waived). This alone is sufficient to affirm the decision below.

Grina, 344 F.3d 134, 144 (1st Cir. 2003)). This doctrine protects the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citations omitted).

Courts typically require the concurrence of three elements for judicial estoppel to apply: 1) the party's current position is clearly inconsistent with its prior position; 2) the party "succeeded in persuading a court to accept the earlier position;" and 3) the party "would stand to derive an unfair advantage if the new position is accepted by the court." Id. (citations omitted). All of these are present here.

The first two elements are interrelated in this case. Martínez's current position is that the Corporation is a "separate and distinct entity" from herself. But this is entirely at odds with the position she assumed in moving for substantive consolidation of the personal and corporate cases. To wit, she asked the Bankruptcy Court to retain her "as the surviving entity" in those proceedings. See Bkr. # 14-06411, Docket # 11, ¶ 6. She also represented – among other things – that she was the sole officer of the Corporation, and that the Corporation's affairs were entirely "steered by Debtor." Id. These allegations convinced the Bankruptcy Court to grant her request, even over Scotiabank's objections. See Docket ## 11, 17, 24 & 34.

Significantly, Martínez maintained this position even after the Bankruptcy Court had dismissed the consolidated cases. Martínez never objected to the Bankruptcy Court's minutes stating that "[t]he debtor is a doctor." See Bkr. # 14-06411. And in explaining why she had not filed the plan, Martínez had this to say:

> After analyzing her options and failing to reach an agreement with her secured creditor Scotiabank of Puerto Rico ("Scotiabank") to save her residence, Debtor decided to abide by the clear language of the order issued by this Court at Docket No. 77.

See Docket # 88, ¶ 5 (emphasis added). It is evident that, throughout those proceedings, the Bankruptcy Court's orders were not directed at the Corporation, but rather at Martínez.

The third element is also easily met. Martínez now says, in essence, that she could not willfully disregard a court order that was not directed at her. If the Court were to accept this position, then it could be more difficult to find a prima facie case for dismissal under § 109(g). If this would require a reversal, or even a remand to the Bankruptcy Court for further findings, then Martínez's change in position would only serve to delay the ultimate resolution of the foreclosure proceedings. This would certainly "impose an unfair detriment" on Scotiabank, and, by the same token, provide an "unfair advantage" to Martínez. New Hampshire, 532 U.S. at 751.

For these reasons, the Court will not allow Martínez to weasel out of the representations she made below. She must abide by their consequence, which is now the dismissal of her Chapter 13 case.

The Court ends with a comment on the litigation strategy employed by Martínez. For years, she has used the bankruptcy system to frustrate Scotiabank's efforts to foreclose on the mortgaged property. On the record before the Court, it is clear that Martínez has engaged in the very conduct – characterized by shifting positions, smokescreens, and perpetual delays – that Congress sought to suppress by enacting § 109(g) of the Bankruptcy Code. The Bankruptcy Court's decision to dismiss Debtor's Chapter 13 case is therefore **affirmed**. And, given the equities in this case, the Court finds no abuse of discretion in the Bankruptcy Court's decision to implement a two-year bar to refile.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge